**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kosto Jaksic,<br><br>             Petitioner,<br><br>v.<br><br>Mina Serif,<br><br>             Respondent. | No. CV-14-01937-PHX-NVW<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, and ORDER** |

Before the Court is Kosto Jaksic's Verified Complaint and Petition for Return of Child to Plaintiff (Doc. 1). Based on the following findings of fact and conclusions of law, the Court will deny the petition.

**I.     BACKGROUND**

On September 3, 2014, Petitioner Kosto Jaksic filed a petition seeking the return of his child M.J. to Serbia pursuant to the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*, which implements the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 19 I.L.M. 1501 ("Hague Convention" or "Convention"). Jaksic alleges that his former wife, Respondent Mina Serif, removed M.J. in breach of Jaksic's custody rights.

On November 19, 2014, the Court held a hearing at which Jaksic and Jaksic's sister testified telephonically from Serbia through a court translator and Serif and Serif's husband testified in person. Both parties were represented by counsel and proffered documentary evidence. The Court took the matter under advisement and now makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

On October 1, 2005, Jaksic and Serif were married in the Republic of Bosnia and Herzegovina. On March 1, 2006, their son M.J. was born in the Republic of Serbia. Beginning in August 2010, Jaksic and Serif lived separately, M.J. lived with Serif, and Jaksic continued to see M.J.

On March 23, 2011, Jaksic and Serif's marriage was dissolved by the First Basic Court of Belgrade, Republic of Serbia ("Belgrade Court") based on the parties' mutual consent to dissolution and their signed agreement on the exercise of their parental rights related to M.J. The parties agreed that M.J. would live with Serif, and Serif would independently exercise parental rights over M.J. for care, guardianship, and upbringing. The parties agreed that Jaksic would contribute 20% of his regular monthly earnings after deductions to support M.J. The parties also agreed on the manner of maintaining contact between Jaksic and M.J., which was that Jaksic would see M.J. when Serif agreed and Jaksic had time. The parties did not agree to any schedule or minimum time for Jaksic's personal contact with M.J. The parties' agreement did not establish a procedure for Jaksic to obtain personal contact with M.J. without Serif's agreement. The Belgrade Court determined that the parties' agreement on parental rights was in the best interest of the minor child and accepted the agreement. The March 23, 2011 judgment ordered that the marriage is dissolved, the minor child M.J. is entrusted to his mother Serif "who will exercise the parental right on her own," Jaksic is obligated to pay monthly child support directly to Serif, and the parties "shall regulate the manner of maintaining personal relations with the minor child with his father by mutual agreement." After the divorce, Serif permitted Jaksic to see M.J. in Belgrade and to take M.J. out of Serbia to visit Jaksic's parents and other family members.

On August 15, 2011, Serif married Esad Serif, who is a United States citizen. Subsequently, Serif applied for visas for M.J. and her to move to the United States. She did not tell Jaksic that she had applied for visas because it was a lengthy process and she

may have been unsuccessful. However, Jaksic suspected that Serif planned to move to the United States and take M.J. with her.

On January 5, 2012, Jaksic initiated a lawsuit in the Belgrade Court to modify the judgment regarding custody of M.J. His complaint described the dissolution judgment as entrusting the custody of M.J. for care and protection to Serif, "who shall independently perform her parental rights." The complaint alleged that during the consensual divorce the parties had agreed that significant decisions regarding M.J., including change of residence, would be decided in a consensual, agreeable manner, but Serif was excluding Jaksic from such decisions. The complaint also stated that Jaksic had concluded that Serif intended to leave the country with M.J. and her current spouse, an American citizen, and to immigrate to America. Jaksic requested that the child custody provision of the March 23, 2011 judgment be modified to provide joint parental rights.

A few days after Serif received notice of the Belgrade Court lawsuit, she had a telephone conversation with Jaksic during which Jaksic strongly opposed Serif taking M.J. to the United States and used foul language. Serif perceived Jaksic as possibly threatening her physically. Serif forbade Jaksic from seeing M.J. for at least six months and notified the court social worker and the police about their conversation.

On June 9, 2012, during a court proceeding, Jaksic said he would amend his complaint because he did not want to modify the child custody decision; he wanted only to organize his contact with M.J. to have a more precise schedule for visitation. But he did not amend his complaint.

On September 19, 2012, Serif signed a statement giving her consent that M.J. could travel to Bosnia and Herzegovina, Republic of Srpska, from September 20, 2012, to September 25, 2012. Jaksic took M.J. to Bosnia and Herzegovina so that M.J. could see his grandparents and cousins.

On October 23, 2012, a psychologist for the City of Belgrade reported to the Belgrade Court investigative findings and recommendations regarding custody of M.J. On October 30, 2012, Serif appeared at the scheduled hearing on Jaksic's complaint, but

Jaksic did not appear and did not justify his absence. The Belgrade Court ordered that Jaksic inform the court whether he wanted to continue the lawsuit, and if he did, he should submit a motion to amend the complaint. The Belgrade Court warned Jaksic that if he failed to comply with an order of the court, the complaint would be deemed withdrawn. On February 1, 2013, the Belgrade Court ordered that Jaksic's complaint was withdrawn and informed Jaksic that he could appeal the ruling within 15 days. Jaksic did not appeal the ruling.

Jaksic filed the legal action in the Belgrade Court to obtain greater parenting rights and precise time with M.J. Although Jaksic and Serif signed an agreement that Serif could independently exercise parental rights and Jaksic could have contact with M.J. only if Serif agreed, the Belgrade Court could have modified the terms of the divorce to grant Jaksic joint parental rights or a minimum amount of contact with M.J. By abandoning the action, Jaksic prevented the Belgrade Court from deciding whether he should be given greater parental rights than the written agreement stated.

Jaksic testified that Serif asked him to discontinue the lawsuit, and he did so because she said she was not going to leave Serbia and she would allow him to talk to M.J. by telephone. Serif testified that she never agreed not to move to the United States. She allowed Jaksic to take M.J. to see his grandparents and cousins in September 2012 without requiring Jaksic to first withdraw his complaint and before Jaksic failed to appear at the October 30, 2012 hearing. The Court finds that Jaksic's testimony regarding his reasons for abandoning his Belgrade Court lawsuit is not credible.

On August 21, 2013, the United States issued immigrant visas to Serif and M.J. On September 2, 2013, both visas were endorsed by the U.S. Department of Homeland Security, U.S. Customs and Border Protection. Both Serif and M.J. were issued U.S. permanent resident status as of September 2, 2013. On September 3, 2013, Esad Serif posted photographs online of Serif and M.J. on an airplane, apparently near South Bend, Indiana. On September 3, 2013, Jaksic tried to call Serif and could not reach her. Jaksic

then called Serif's father, who told Jaksic that Serif and M.J. had departed for the United States. The Court finds that Serif removed M.J. from Serbia on September 2, 2013.

After Serif and M.J. moved to the United States, Jaksic had conversations with M.J. via Skype about once a month, but Serif did not talk to Jaksic. During a January 2014 Skype conversation, however, Serif told Jaksic that her work schedule had changed and they needed to change Jaksic's Skype contacts. Jaksic called Serif bad words in front of M.J., and thereafter Serif did not permit Jaksic to have any Skype conversations with M.J.

On June 16, 2014, Jaksic submitted an Application Under the Hague Convention on the Civil Aspects of International Child Abduction to the U.S. Department of State for the return of M.J. On September 3, 2014, Jaksic initiated the present action, alleging that the September 2, 2013 removal of M.J. from Serbia breached Jaksic's custody rights.

### III. CONCLUSIONS OF LAW

Both Serbia and the United States are parties to the Hague Convention. The International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*, gives the Court jurisdiction to adjudicate petitions arising under the Convention. A decision concerning the return of a child is not a determination on the merits of any custody issue. Convention, Art. 19.

The Convention is designed to "secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Convention, Art. 1. The Convention applies to any child under the age of 16 years "who was habitually resident in a Contracting State immediately before any breach of custody or access rights." Convention, Art. 4.[1]

---

[1] Under the Convention, the term "rights of custody" includes rights relating to the care of the child, particularly the right to determine the child's place of residence. Convention, Art. 5. The term "rights of access" includes "the right to take a child for a limited period of time to a place other than the child's habitual residence." *Id.*

Under the Convention, the removal or retention of a child is considered "wrongful" where (a) "it is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention" and (b) "at the time of removal or retention those rights were actually exercised . . . or would have been exercised but for the removal or retention." Convention, Art. 3. The rights of custody include those arising by operation of law, by a judicial or administrative decision, or by an agreement having legal effect under the law of the State of habitual residence. *Id.* To obtain the return of a child, the petitioner must establish by a preponderance of the evidence that the child has been wrongfully removed or retained as defined by Article 3. 42 U.S.C. § 9003(e)(1)(A).

Where the removal or retention of a child is "wrongful" as defined in Article 3 of the Convention, and where judicial proceedings are initiated where the child is located within one year of the wrongful removal or retention, the Court must order the child to be returned forthwith. Convention, Art. 12. Where the removal or retention of a child is "wrongful" as defined by Article 3, and judicial proceedings are initiated more than one year after the wrongful removal or retention, the Court must order the child to be returned "unless it is demonstrated that the child is now settled in its new environment." *Id.*; *see In re B. Del C.S.B.*, 559 F.3d 999, 1009 (9th Cir. 2009) (multiple factors bear on whether the child has significant connections to the new country). The one-year period in Article 12 of the Hague Convention is not subject to equitable tolling. *Lozano v. Montoya Alvarez*, __ U.S. __, 134 S. Ct. 1224, 1236 (Mar. 5, 2014). A respondent who opposes the return of a child based on Article 12 must do so by establishing the basis by a preponderance of the evidence. 42 U.S.C. § 9003(e)(2)(B).

Notwithstanding the provisions of Article 12, the Court is not required to order the return of the child if the respondent establishes by a preponderance of the evidence that the petitioner was not actually exercising his custody rights at time of removal or retention or had consented to or subsequently acquiesced in the removal or retention. Convention, Art. 13(a); 42 U.S.C. § 9003(e)(2)(B). Further, the Court is not required to order the return of

the child if the respondent establishes by clear and convincing evidence that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention, Art. 13(b); 42 U.S.C. § 9003(e)(2)(A).

"The key operative concept of the Convention is that of 'wrongful' removal or retention." *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001). The removal must satisfy the requirements of Article 3 to trigger a state's obligations under the Convention. *Id.* To determine whether a removal is wrongful, a court must answer the following questions:

> (1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?

*Id.* Here, the removal took place on September 2, 2103, and the parties agree that immediately prior to the removal, M.J. was habitually resident in Serbia.

### A. Jaksic Failed to Establish that M.J.'s Removal Was Wrongful.

As a condition for any relief under the Hague Convention, Jaksic must establish by a preponderance of the evidence that the removal of M.J. from Serbia was in breach of his custody rights and at the time of removal Jaksic was exercising those rights. *See* Convention, Art. 3. The dissolution judgment of the Belgrade Court does not expressly grant Jaksic any right of custody or unconditional right of access. It orders that Serif will independently exercise parental rights and Jaksic will have contact with M.J. only when Serif permits it. Jaksic did not provide any Serbian legal authority or expert testimony showing that the dissolution judgment, which incorporates the agreement on parental rights, would be interpreted by the Belgrade Court as granting Jaksic greater rights than those actually stated. At the time of the dissolution, Jaksic may have believed that Serif agreed he was guaranteed access to M.J. and participation in decisions about M.J.'s care, education, and residence, but that is not what the court documents state. Jaksic had

1 opportunity to have the Belgrade Court modify the dissolution judgment if it was incorrect, incomplete, or unfair, but he abandoned his lawsuit before the Belgrade Court. Jaksic frustrated the very proceedings that might have given him rights of custody inconsistent with Serif's immigration to the United States with M.J. He knew Serif claimed and intended to exercise that right. Therefore, he cannot show this Court that he is entitled to greater parental rights than those provided by the dissolution judgment.

Even if Jaksic was entitled to greater parental rights than those provided by the dissolution judgment, he was not exercising greater rights at the time of removal. His claim in the Belgrade Court stated that Serif was excluding him from significant decisions, including change of residence. Jaksic subsequently told the Belgrade Court that he wanted to amend his claim to only request scheduled access to M.J. and not to modify his custody rights. He did not withdraw his claim or inform the Belgrade Court that he no longer needed the lawsuit because Serif had promised not to move to the United States. There is no evidence that Jaksic was contacting M.J. without Serif's agreement or was participating in decisions about M.J.'s care or residence at the time Serif removed M.J. from Serbia.

Because Jaksic has not established by a preponderance of the evidence that the removal of M.J. from Serbia was in breach of his custody rights and at the time of removal Jaksic was exercising those rights, the Court does not decide additional issues raised by the parties, including whether M.J. is now settled in his new environment, Jaksic subsequently acquiesced in the removal, or there is a grave risk that returning M.J. to Serbia would expose him to physical or psychological harm or otherwise place him in an intolerable situation.

### B. Attorney Fees and Costs

The parties included requests for attorney fees and costs in their pleadings. The International Child Abduction Remedies Act provides that petitioners may be required to bear "the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved and any accompanying

persons," but the court must order the respondent to pay petitioner's fees, costs, and certain expenses if the court orders the return of the child, unless the respondent establishes that such fee-shifting would be clearly inappropriate. 22 U.S.C. § 9007(b). The statute does not authorize a court to order a petitioner to pay a respondent's fees and costs if the court does not order the return of the child. Even if it did, under the circumstances of this case, the Court would exercise its discretion to order each party to bear his or her own fees and costs. Therefore, no attorney fees or costs will be awarded.

IT IS THEREFORE ORDERED that the Clerk of the Court enter judgment that Kosto Jaksic's Verified Complaint and Petition for Return of Child to Plaintiff (Doc. 1) is denied. The Clerk shall terminate this case.

Dated this 26th day of November, 2014.

Neil V. Wake
United States District Judge